UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
DAN BROWN and RANDOM HOUSE, INC.,   :

                Plaintiffs,        :      **REPORT AND RECOMMENDATION**

        -against-            :        04 Civ 7417 (GBD)(KNF)

LEWIS PERDUE,                :

                Defendant.     :
-------------------------------------------------------X
LEWIS PERDUE,                :
           Counterclaimant,

                         :

        -against-            :

DAN BROWN, RANDOM HOUSE, INC.,
COLUMBIA PICTURES INDUSTRIES, INC.,   :
SONY PICTURES ENTERTAINMENT,
INC., SONY PICTURES RELEASING     :
CORPORATION, and IMAGINE FILMS
ENTERTAINMENT LLC,            :

          Counterclaim Defendants.:
-------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE GEORGE B. DANIELS, UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

    On September 17, 2004, Dan Brown ("Brown") and Random House, Inc. ("Random

House") (collectively "plaintiffs") brought this action seeking a declaratory judgment that the

book, *The Da Vinci Code*, had not infringed Lewis Perdue's ("Perdue") copyrights in his books,

*Daughter of God* and *The Da Vinci Legacy*.   Perdue asserted counterclaims, alleging copyright

infringement, against the plaintiffs and counterclaim-defendants: Columbia Pictures Industries,

Inc., Sony Pictures Entertainment, Inc., Sony Pictures Releasing Corporation, and Imagine Films

Entertainment LLC, who had determined to create a motion picture based on Brown's book.

On August 4, 2005, your Honor granted summary judgment in favor of the plaintiffs.

See Brown v. Perdue, No. 04 Civ. 7417, 2005 WL 1863673 (S.D.N.Y. Aug. 4, 2005) ("August 4

Opinion") *aff'd* Dan Brown and Random House, Inc. v. Perdue, No. 05-4840-CV, 2006 WL

1026098 (2d Cir. Apr. 18, 2006).  Thereafter, plaintiff Random House and the other counterclaim

defendants ("plaintiff/counterclaim-defendants" or "movants" ), except for Brown, made the

instant motion for attorneys' fees and costs, pursuant to 17 U.S.C. § 505, and Fed. R. Civ. P.

54(d), in the amount of $310,580.24 ($310,324.11, attorneys' fees; $256.13, costs).  Your Honor

then referred the matter to the undersigned for a report and recommendation on the propriety of

the movants' request.  The movants' application for attorneys' fees and costs is addressed below.

## II.  BACKGROUND[1]

As noted above, Brown and Random House commenced this action seeking declaratory

relief.  After the defendant appeared in the action, Brown and Random House made a motion for

summary judgment.  The court determined to grant the plaintiffs' request for summary judgment

on their application for a declaratory judgment, that "plaintiffs' authorship, publication and

exploitation of rights in and to *The Da Vinci Code* [did] not infringe the copyrights owned by

defendant."  The court based its determination on its finding that no substantial similarity

between Brown's literary work, *The Da Vinci Code,* and the defendant's books, *Daughter of God*

---

[1] A complete factual history of this case is set forth in the August 4 Opinion.  Familiarity
with that document and the factual history recited therein is assumed.  Therefore, only those facts
relevant to the instant application for attorneys' fees and costs are presented here.

and *The Da Vinci Legacy* existed.

As the prevailing parties, the movants contend that the court would be warranted in exercising its discretion and awarding them attorneys' fees, pursuant to 17 U.S.C. § 505, because the counterclaims asserted by Perdue in this action were: (1) objectively unreasonable; and (2) brought in bad faith, and due to an improper motivation, *to wit*: a desire to gain financial reward by claiming, improperly, that *The Da Vinci Code* derived from and infringed Perdue's published works.

According to the movants, Perdue's claims of infringement were objectively unreasonable because: (i) the central legal issue-- whether the books were substantially similar -- was not "a close one"; (ii) the defendant's claims involved a straightforward application of the substantial similarity standard and, as such, did not require the court to analyze complex or novel legal issues; (iii) the defendant's submissions in opposition to the plaintiffs' motion for summary judgment contained "many overstatements and inaccuracies"; (iv) Perdue "essentially abandoned" all the infringement claims premised on *The Da Vinci Legacy*; and (v) Perdue pursued counterclaims against Sony Pictures Entertainment, Inc. and Sony Pictures Releasing Corporation ("Sony counterclaim-defendants"), unjustifiably.

The movants also contend that an award of attorneys' fees would be appropriate in the instant case because Perdue acted in bad faith when he asserted his counterclaims. According to the movants, this is evident, because Perdue "launched a 14-month publicity [campaign designed] to link his books to the *Da Vinci Code* based on exaggerated claims." The movants maintain that the publicity campaign "continued in full force after Brown and Random House were forced to sue Perdue in September 2004." The movants allege, further, that the defendant,

"fueled by unfounded accusations, [] used this dispute as the centerpiece of a marketing campaign to promote his books . . . ."  The movants contend that the Court should award them attorneys' fees to "deter others from trying to use similarly weak allegations of infringement to ride on the coattails of bestselling authors."

The defendant opposes the movants' request for attorneys' fees and costs.  Perdue contends, *inter alia*, that his counterclaims were objectively reasonable because of: (i) the similarities that exist between the books; (ii) the e-mail comments he received from "aficionados of the genre [noting the similarities];" (iii) the opinion he obtained from a forensic linguist; (iv) the complexities of the novels; and (v) the "elusive nature between an idea and an expression of an idea."

In addition, Perdue maintains that his counterclaims were pursued in good faith because, if he had not raised his infringement claims in the instant action, he would have been foreclosed from doing so in the future.  Furthermore, Perdue contends that he brought the Sony counterclaim-defendants into the action to prevent future infringement of his works through the release of their motion picture, *The Da Vinci Code*.  Moreover, Perdue has stressed that his attempt "to first seek information (without legal representation or any thought of litigation)," by writing to Random House's publisher and its general counsel, demonstrates his good faith.  According to Perdue, he was concerned about initiating litigation with Random House, prematurely, due to that company's superior financial resources.

In response to the movants' allegation that Perdue's counterclaims were brought solely to obtain financial reward for him, Perdue notes, relying on Proctor & Gamble Co. v. Colgate-Palmolive Co., No 96 Civ. 9123, 1999 WL 504909, at *4 (S.D.N.Y. July 15, 1999), that "the

existence of commercial implications surrounding a copyright claim [do] not render that claim improperly motivated."

Perdue maintains that an award of attorneys' fees and costs to the movants is not warranted in the circumstance of this case, because of the "disparate financial conditions" of the parties. He contends the movants can bear their own fees and costs. Moreover, Perdue alleges that an award by the court, to the movants, of their fees and costs would ruin him financially.

### III. DISCUSSION

A prevailing party in an action such as this, brought under the Copyright Act, may be awarded the party's reasonable attorney's fees and all costs it incurred. See 17 U.S.C. § 505. The decision to award attorney's fees to the prevailing plaintiff or defendant, pursuant to the statute, rests within the sound discretion of the court. See Fogerty v. Fantasy, Inc., 510 U.S. 517, 533, 114 S. Ct. 1023, 1033 (1994). In Fogerty, the Supreme Court identified several nonexclusive factors that a court should consider when exercising the discretion conferred upon it by the statute. The factors include the non-prevailing party's frivolousness and motivation, as well as the objective unreasonableness of the litigation, giving due consideration to both the factual and legal components of the case. A court should also consider the need, in particular circumstances, to advance considerations of compensation and deterrence. See id. at 534-535 n.19, 114 S. Ct. at 1033 n.19.

"Objective unreasonableness is one of the most significant factors and, in the Second Circuit in particular, it is given substantial weight in determining whether fees are warranted." Baker v. Urban Outfitters, Inc., 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006). Moreover, courts in this judicial district have found that objectively unreasonable litigation conduct is itself an

adequate basis upon which to obligate a party to tender attorney's fees to the prevailing party.

See Screenlife Establishment v. Tower Video, Inc., 868 F. Supp. 47 (S.D.N.Y. 1994); Woods v.

Bourne Co., 858 F. Supp. 399 (S.D.N.Y. 1994).

*Objective Unreasonableness*

    "[N]ot all unsuccessful litigated claims are objectively unreasonable.  The infirmity of

the claim, while falling short of branding it as frivolous or harassing, must nonetheless be

pronounced." CK Company v. Burger King Corp., No. 92 Civ. 1488, 1995 WL 29488, at *1

(S.D.N.Y. Jan. 26, 1995) *affirmed* 122 F.3d 1055 (2d Cir. 1995).  The essential issue in

determining whether to award attorney's fees in a Copyright Act action is "whether the factual

and legal support [for the party claiming infringement] . . . was so lacking as to render its claim

frivolous or objectively unreasonable." Proctor & Gamble Co., 1999 WL 504909, at *2.  "[T]he

courts of this Circuit have generally concluded that only those claims that are clearly without

merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively

unreasonable." Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd., No.

96 Civ. 4126, 2004 WL 728878, at *3 (S.D.N.Y. Apr. 6, 2004).  Moreover, cases with claims

involving novel or complex issues do not warrant a court in making a finding of objective

unreasonableness.  See Littel v. Twentieth Century-Fox Film Corp., No. 89 Civ. 8526, 1996 WL

18819, at *3 (S.D.N.Y. Jan. 18, 1996).

    In order to determine whether Perdue's counterclaims were objectively unreasonable,

such that an award of attorneys' fees to the movants would be warranted, the Court has relied on

the August 4 Opinion.  See Adsani v. Miller PMA, No. 94 Civ. 9131, 1996 WL 531858, at *16

(S.D.N.Y.  Sept. 19, 1996) (relying on the text of the court's earlier summary judgment opinion

to resolve, *inter alia*, an application for attorney's fees made in a copyright action).

In the August 4 Opinion, the court analyzed the defendant's primary claim, that "Brown copied the basic premise underlying *Daughter of God* . . ." and described the various elements Perdue alleged were common to his book and to Brown's book.  The court found that all the elements of similarity Perdue identified "[were] unprotectable ideas, historical facts, and general themes that [did] not represent any original elements of Perdue's work."  Brown, 2005 WL 1863673, at *6-7.  In performing its analysis, the court examined each book's: (1) thematic expression, and found that Brown's expression of his religious themes in *The Da Vinci Code* differ markedly from Perdue's expression of his themes in *Daughter*.  Id. at 9; (2) total concept and feel, and found that "no reasonable jury could conclude that the total concept and feel of *The Da Vinci Code* is substantially similar to that of *Daughter of God.*"  Id. at 10; (3) plot, and found that "[t]he fundamental essence and structure of the plots are not substantially similar and offer no support to Perdue's infringement claim.  *The Da Vinci Code* is simply a different story than that told by *Daughter of God*."  Id. at 11; (4) characters, and found "there is no substantial similarity between any of the characters in *The Da Vinci Code* and *Daughter of God*.  The heros and heroines are different in each book."  Id. at 11; and (5) sequence and pace, and found that "[a]lthough both *Daughter of God* and *The Da Vinci Code*, as mystery thrillers, enjoy fast-paced scenes, the time sequence of each book differs considerably. . . .  The setting of each book is also different. . . .  The characters, sequence, pace and setting of each book are not substantially similar and do not support an infringement claim."  Id. at 12-13.

Perdue could not persuade the court that a substantial similarity exists between his books and *The Da Vinci Code*.  His unsuccessful attempt to do so does not mean that Perdue's claims

were objectively unreasonable.  See CK Co., 1995 WL 29488 at *1.  Moreover, nothing in the

August 4 Opinion dictates that such a conclusion must be reached.  For example, in the August 4

Opinion the court explained that the *"[g]ravamen* of Perdue's complaint is that Brown copies

the basic premise underlying *Daughter of God."*  The court noted that Perdue's claims turn on "a

finding of substantial similarity between the two books."  The court also explained that the test it

was required to employ was "whether an average lay observer would recognize the alleged copy

as having been appropriated from the copyrighted work."  Although it is true that, after a

thorough review of each of the factors described above the court determined that an average lay

observer would conclude that *The Da Vinci Code* "is simply a different story than that told by

*Daughter of God*," Perdue proffered e-mail he received from "lay observers," who claimed

Brown had "plagiarized" Perdue's work.  In addition, a forensic linguist also supported Perdue's

claims.  Moreover, the Court notes that, although the August 4 Opinion is a sweeping rejection of

all Perdue's allegations of similarity, the court neither characterized Perdue's claims as frivolous

nor stated that they were close to frivolous.  Therefore, the Court finds that Perdue's

counterclaims were objectively reasonable.

However, a finding of objective reasonableness does not necessarily preclude the award

of attorney's fees, if other factors justify such an award.  See Matthew Bender & Co. v. West

Publishing Corp., 240 F.3d 116, 122-123 (2d Cir. 2001).  Therefore, the Court must determine

whether the defendant's motivation and/or bad faith support an award of attorneys' fees to the

movants.

*Improper Motivation and Bad Faith*

The presence of improper motivation in bringing a lawsuit or other bad faith conduct

weighs heavily in favor of an award of costs and fees.  See Matthew Bender & Co., 240 F.3d at

125-27.

 In the instant action, the movants contend that Perdue "is an opportunist willing to accuse

[Brown] of copyright infringement for his . . . own gain."  The movants contend that Perdue

should have filed a lawsuit against them before "launching a 14-month publicity effort to link his

books to *The Da Vinci Code*. . . ."

 The defendant's conduct in publicizing his belief that *The Da Vinci Code* infringed his

copyrights, does not demonstrate bad faith.  The movants have offered no legal support for a

finding that the type of publicity in which Perdue engaged, demonstrates "improper motivation"

and/or bad faith.  Moreover, although the defendant could have initiated a lawsuit against the

plaintiffs at any point after he became aware of what he believed were similarities between his

literary work and Brown's book, he did not do so.  Perdue maintains that he refrained from

commencing an action in the hope that Random House would settle the matter with him without

resorting to expensive and time-consuming litigation.  Perdue's hope was dashed when Brown

and Random House elected not to discuss the prospect of settlement, and determined to litigate

the matter by initiating this action for a declaratory judgment.  In response, Perdue asserted

counterclaims of infringement.  He contends that he did so only to ensure that any right that he

might have had to raise those claims would not be lost forever.  In the circumstance of the instant

action, the Court cannot conclude that Perdue acted as he did, in response to the initiation of

litigation by the plaintiffs, due to an improper motivation or bad faith.  Consequently, these

factors, improper motivation and bad faith, do not militate in favor of an award of attorneys' fees

to the movants.

*Financial Disparity Between the Parties*

The Court is mindful that "[c]ourts addressing fee applications [in the context of a copyright action] have considered the relative financial strength of the parties" Leibovitz v. Paramount Pictures Corp., No. 94 Civ. 9144, 2000 WL 1010830, at *5 (S.D.N.Y. July 21, 2000), in determining whether an award of attorney's fees is appropriate. See also Littel, 1996 WL 18819, at *3. In the case at bar, the defendant has submitted copies of his 2003 and 2004 income tax returns to establish his claim that the amount requested by the movants for their attorneys' fees, $310,324.11, would ruin him financially, if the court were to award that amount to them.

For their part, the movants maintain that the publicity campaign Perdue waged concerning his infringement allegations resulted in a resurgence of interest in one of his books, which was then not in print, but was reissued, and increased the number of sales his other book garnered. The movants contend that, owing to the publishing industry's typical customs and practices, the financial rewards they allege Perdue reaped, as a result of the instant controversy, would not be reflected in the income tax returns he disclosed to the Court, but likely would be reflected in the income tax return Perdue filed subsequent to making his 2004 income tax filing. Moreover, the movants also contend that the income tax data Perdue disclosed may not reflect all the assets at his disposal. Therefore, the movants maintain it is not possible to ascertain, from the record before the Court, whether Perdue can pay the attorneys' fees they seek, without becoming impoverished.

The Court finds that the submissions made by the defendants do not establish that he would be unable to pay the attorneys' fees the movants seek, since the income tax return data in the record before the Court are not Perdue's most recent income tax filings and, therefore, they

-10-

may not reflect accurately his most recent annual income nor all assets Perdue has available to him to satisfy any award of attorneys' fees the court might make.  Consequently, in the absence of current data that reflect, comprehensively, Perdue's income and assets, his forecast of financial ruin, should an award of attorneys' fees be made by the court, is not convincing.

*Purpose of the Copyright Act*

Since, "[t]he primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public," Fogerty, 510 U.S. at 524, 114 S. Ct. at 1028, "the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." Matthew Bender & Co., 240 F.3d at 122.  Based on all of the factors the Court has weighed in analyzing the movants' application for attorneys' fees, the Court finds that the imposition of an award of attorneys' fees against Perdue would not promote the objectives of the Copyright Act because the defendant's counterclaims were not objectively unreasonable.  Furthermore, the Court is not persuaded that the prosecution of Perdue's counterclaims was undertaken in bad faith or for an improper purpose.  Therefore, the Court finds that an award to the movants, of the attorneys' fees they incurred in connection with this action, is not warranted.

*Costs*

In addition to their request for attorneys' fees, the movants requested their costs, pursuant to 17 U.S.C. § 505 and Fed. R. Civ. P. 54.  The provision of the Copyright Act relied on by the movants, and cited above, permits a court, in the exercise of its discretion, to award a prevailing party its full costs.  In addition, Fed. R. Civ. P. 54, in its most pertinent part, advises that "[e]xcept when express provision therefor is made either in a statute of the United States or in

these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." Fed. R. Civ. P. 54(d).

The movants have submitted to the Court detailed records of the costs they incurred in connection with the instant action.  Their submission establishes that they incurred costs in the amount of $256.13.  The Court finds that, in the case at bar, no reason exists to ignore the dictates of Fed. R. Civ. P. 54(d).  Therefore, it is reasonable and appropriate to award the movants the costs that they incurred in connection with this action.

## IV.  RECOMMENDATION

For the reasons set forth above, the Court recommends that the movants' request for attorneys' fees be denied, and that their request for an award of costs, in the amount of $256.13, be granted.

## V.  FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of the Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States District Judge, 40 Centre St., Room 410, New York, New York 10007, and to the chambers of the undersigned, 40 Centre St., Room 540, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Daniels. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993);

-12-

Case 1:04-cv-07417-GBD-KNF   Document 64   Filed 08/31/06   Page 14 of 14

Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Candair Ltd., 838 F.2d 55, 57-

59 (2d Cir. 1998); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
August 30, 2006

Respectfully submitted,

Kevin rathaniel F1

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

-13-